```
IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF TEXAS
              DALLAS DIVISION

DON WESLEY,                        §
                                   §
              Plaintiff,           §
                                   § Civil Action No. 3:05-CV-2266-D
VS.                                §
                                   §
YELLOW TRANSPORTATION, INC.,       §
C/O THE FRICK CO.,                 §
                                   §
              Defendant.           §

RICHARD A. ARRIETA, et al.,        §
                                   §
              Plaintiffs,          §
                                   § Civil Action No. 3:05-CV-2271-D
VS.                                §
                                   §
YELLOW TRANSPORTATION, INC.,       §
C/O THE FRICK CO.,                 §
                                   §
              Defendant.           §
```

## MEMORANDUM OPINION AND ORDER

Plaintiffs Don Wesley ("Wesley"), Ben Crommedy ("Crommedy"), and Roger Johnson ("Johnson")—who at trial obtained relatively modest damages awards on their racially hostile work environment claims but who were unsuccessful pretrial on their remaining claims—apply for an award of attorney's fees from defendant Yellow Transportation, Inc. ("YTI"). Concluding that attorney's fees should be awarded but in a reduced amount to reflect the limited recoveries obtained, the court grants their motions in part and denies them in part.

I

The court has addressed these cases in several opinions, including a recent opinion amending the judgment. *See Wesley v. Yellow Transp., Inc.*, 2010 WL 3606095 (N.D. Tex. Sept. 16, 2010) (Fitzwater, C.J.). The court will therefore pretermit an extended discussion of the background facts and procedural history and focus on what is pertinent to the attorney's fees issue.

Wesley and Crommedy recovered against YTI under 42 U.S.C. § 1981. Johnson recovered under § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.[1] Based on the jury verdict, the court by amended judgment awarded Wesley $45,000 in damages, Crommedy $25,000 in damages, and Johnson $70,000 in damages, and ordered that all three plaintiffs recover prejudgment and post-judgment interest. The court required that they bear 50% of their own taxable costs because the court had dismissed all but their racially hostile work environment claims against YTI on summary judgment.

Plaintiffs seek a total of $860,824.50 in attorney's fees.[2] This sum is composed of the following: $467,840 for Janette Johnson, Esquire ("Johnson"); $274,452 for Jane Legler Byrne,

---

[1]Johnson also recovered under the Texas Commission on Human Rights Act.

[2]The term "attorney's fees" includes a small amount for the fees of one legal assistant. For ease, the court will refer throughout this memorandum opinion and order to "attorney's fees."

Esquire ("Byrne"); $13,430 for Christine Neill, Esquire ("Neill") (collectively, the "Johnson Lawyers")[3]; and $86,796.75 for John E. Schulman, Esquire ("Schulman"); $11,655.75 for Margaret K. Schulman, Esquire ("Margaret Schulman"); and $6,650 for Noreen Smith ("Smith"), a legal assistant at The Schulman Law Firm, P.C. (collectively, the "Schulman Law Firm").

YTI's primary argument is that plaintiffs' request for $860,824.50 in fees is excessive. YTI first emphasizes that a small number of original plaintiffs prevailed at trial on only a small number of their original claims. Moreover, YTI argues, plaintiffs' recovery at trial was small in comparison both to the attorney's fees plaintiffs now seek and to the large amount of damages plaintiffs originally sought. YTI maintains that the requested fees are excessive when plaintiffs' degree of success is evaluated according to the number of original plaintiffs, the number of original claims, and the significant damages originally sought. YTI also argues that plaintiffs' counsel seek unnecessary fees resulting from duplicative work, technical difficulties, and time extensions. YTI does not challenge the hourly rates that plaintiffs use to calculate the requested fees.

Plaintiffs argue in response that the lodestar should not be

---

[3]The court recognizes that Johnson practices in her own firm and that Byrne and Neill are members of the firm of Byrne & Neill. For ease of reference, and because it does not affect the merits of the court's decision, the court will refer to these three attorneys collectively as the "Johnson Lawyers."

reduced on these grounds because this litigation was protracted and required an exceptional outlay of time and expense by their counsel. Plaintiffs maintain that they are seeking fees only for time their counsel spent representing prevailing plaintiffs on prevailing claims, to the extent such representation is severable from time devoted to non-prevailing plaintiffs and unsuccessful claims. The Johnson Lawyers aver that, in their exercise of billing judgment, they have excised from their bills time dedicated to unsuccessful plaintiffs and claims. The Schulman Law Firm represented only prevailing plaintiffs on prevailing claims at trial.

II

When, as here, a plaintiff prevails on a claim under § 1981, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]" 42 U.S.C. § 1988(b). Similarly, where a plaintiff prevails on a claim under Title VII, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs[.]" 42 U.S.C. § 2000e-5(k).

> The determination of a fees award is a two-step process. *Rutherford v. Harris County*, 197 F.3d 173, 192 (5th Cir. 1999). First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. *Id.* The court should exclude all time that is excessive, duplicative, or inadequately documented. *Watkins v. Fordice*,

> 7 F.3d 453, 457 (5th Cir. 1993). Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

*Jimenez v. Wood Cnty., Tex.*, ___ F.3d. ___, 2010 WL 3672226, at *6 (5th Cir. Sept. 22, 2010). The lodestar, however, is presumptively reasonable and adequate to induce attorneys to undertake representation in meritorious civil rights cases. *See Perdue v. Kenny A.*, ___ U.S.___, 130 S.Ct. 1662, 1672-73 (2010). The applicant bears the burden of substantiating both the requested hours and the hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

### III

The court first considers whether the requested hourly rates are reasonable. Plaintiffs' requests are based on hourly rates of $425.00 per hour for Johnson, $425.00 per hour for Schulman, $395.00 per hour for Byrne and Neill, $325.00 per hour for Margaret Schulman, and $100 per hour for Smith. The attorneys aver that the hourly rates are reasonable; YTI does not challenge this evidence. "When th[e] rate is not contested, it is *prima facie* reasonable." *Islamic Ctr. of Miss., Inc. v. City of Starkville*, 876 F.2d 465, 469 (5th Cir. 1989). The court finds that the rates for the attorneys and legal assistant are reasonable, and they will be used in calculating the lodestar.

IV

The court now determines the number of hours reasonably spent by plaintiffs' counsel.

YTI maintains that plaintiffs are seeking fees for unnecessarily excessive and duplicative work resulting from delays occasioned by some of their counsel. Plaintiffs respond that because they are not seeking compensation for time spent pursuing unsuccessful claims or the claims of parties who were entirely unsuccessful in the litigation, the court should not make further reductions to their requested fees.[4] Plaintiffs also contend that their counsel accounted for delays and filing difficulties when, in the exercise of billing judgment, they removed time devoted to hours for unsuccessful claims and parties.

The court finds that plaintiffs' counsel have adequately accounted for their time in detailed billing records and that no reduction in the number of hours is warranted based on YTI's assertions of delay and excess. *See Gagnon v. United Technisource,*

---

[4]Plaintiffs' counsel maintain that they have removed from their bills the following time dedicated to unsuccessful claims or unsuccessful parties. Johnson avers that she has eliminated 270.84 hours ($115,107.00 in fees). Byrne states that she has eliminated $50,497.00, but her fee request indicates that she removed $50,396.00 (127.58 hours times her hourly rate of $395). Neill avers that she has removed 25.59 hours ($10,108.05 in fees). The attorneys at the Schulman Law Firm, who represented only Wesley, Crommedy and Johnson at trial, and their legal assistant do not indicate that they removed time for unsuccessful claims (they did bill a fraction of their fees at reduced hourly rates for Internet and tax record searches for witness availability).

*Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010) ("Although [plaintiff] has not produced contemporaneous billing records, he has produced very detailed invoices and affidavits that describe the time [his] attorney spent on the various claims."). The court therefore declines on this basis to reduce particular time entries as excessive, duplicative, or inadequately documented. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

V

YTI also contends that plaintiffs' request for attorney's fees is unreasonable when compared to what they recovered in damages: $140,000 in total, which represents less than one-sixth of the requested fees.[5] "[T]here is no *per se* proportionality rule" when awarding attorney's fees. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 802 (5th Cir. 2006) (per curiam) (citing *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 395 (5th Cir. 2003)). But a fee award of more than six times the recovery in a case requires the court to evaluate the lodestar in light of the *Johnson* factors.[6]

---

[5] Plaintiffs have also recovered prejudgment interest, but this does not materially effect the analysis given the comparatively modest amounts on which prejudgment interest is calculated.

[6]
> The Johnson factors include: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or

*See Gagnon*, 607 F.3d at 1044 (5th Cir. 2010) (holding that "[h]ere, however, where the fee award was more than six times greater than the amount of relief awarded to [the plaintiff], we cannot simply assume that the district court considered the *Johnson factors*," and vacating and remanding for consideration of the *Johnson* factors). The court thus evaluates whether consideration of the *Johnson* factors warrants reducing the lodestar amount because of the high fees-to-recovery ratio in this case.

Although the court has considered all the applicable *Johnson* factors,[7] "[t]he most critical factor in determining an attorney's fee is the 'degree of success obtained.'" *Saizan*, 448 F.3d at 799 (quoting *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003)) (upholding reduction in fees in proportion to unsuccessful claims); *see also West*, 330 F.3d at 395 ("The amount of damages a plaintiff recovers is certainly relevant to the amount of

---

>  contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Gagnon*, 607 F.3d at 1044 n.9 (internal quotation marks omitted) (quoting *Migis v. Pearle Vision*, 135 F.3d 1041, 1047 (5th Cir. 1998)).

[7]As the court notes below, the Supreme Court has "barred any use" of the sixth *Johnson* factor, "whether the fee is fixed or contingent." *Rutherford,* 197 F.3d at 193.

attorney's fees to be awarded[.]" (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)). "[T]he plaintiff's monetary success in a private civil rights suit must be the primary determinant of the attorney's fee." *Migis v. Pearle Vision*, 135 F.3d 1041, 1048 (5th Cir. 1998).

Eight original plaintiffs in this case each alleged disparate treatment, retaliation, and a hostile work environment. The court dismissed nineteen of these twenty-four claims at the summary judgment stage. *See, e.g., Wesley v. Yellow Transp., Inc.*, 2008 WL 294526, at *1 (N.D. Tex. Feb. 4, 2008) (Fitzwater, C.J.) (dismissing all of Wesley's Title VII claims); *Wesley v. Yellow Transp., Inc.*, 2008 WL 1931425, at *1 (N.D. Tex. May 2, 2008) (Fitzwater, C.J.) (dismissing Wesley's § 1981-based retaliation claim); *Wesley v. Yellow Transp. Inc.*, 2008 WL 5220562, at *1 (N.D. Tex. Dec. 12, 2008) (Fitzwater, C.J.) (dismissing Wesley's § 1981-based disparate treatment claim); *Arrieta v. Yellow Transp., Inc.*, 2008 WL 5220569, at *1 (N.D. Tex. Dec. 12, 2008) (Fitzwater, C.J.) (dismissing plaintiff Crommedy's hostile work environment claims under Title VII and TCHRA). The court concludes in its discretion that plaintiffs' requested fee award should be reduced based on plaintiffs' limited degree of success. Of the eight original plaintiffs, five plaintiffs proceeded to trial on their respective hostile work environment claims. Wesley's and Crommedy's hostile work environment claims survived under § 1981; Johnson's hostile

work environment claim, as well as the hostile work environment claims of plaintiffs Chris Calip ("Calip") and Richard Arrieta ("Arrieta"), proceeded to trial under § 1981, Title VII, and the Texas Commission on Human Rights Act ("TCHRA"). Only Wesley, Crommedy, and Johnson prevailed at trial, and each prevailed only on his hostile work environment claim. Of the twenty-four original claims, plaintiffs achieved success on only three. Moreover, the total recovery was small in comparison to the relief these plaintiffs sought. *Cf. Denner v. Tex. Dep't of Criminal Justice,* 2007 WL 294191, at *4-5 (W.D. Tex., 2007) (declining to reduce lodestar where plaintiff's recovery approximated the damages sought); *see also Green v. Adm'r of Tulane Educ. Fund*, 284 F.3d 642, 663 (5th Cir. 2002) (holding that no reduction was necessary where, although some claims were dismissed, plaintiff was otherwise highly successful).

VI

Consideration of the other *Johnson* factors, however, does not dissuade the court from adjusting the award downward based on the relative lack of success or persuade the court to adjust the award upward or downward to any other extent.

> There exists a strong presumption of the reasonableness of the lodestar amount. After calculating the lodestar, the court may decrease or enhance the amount based on the relative weights of the twelve factors set forth in *Johnson*. Of the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount

>     involved and the result obtained, and the
>     experience, reputation and ability of counsel.
>     The lodestar may not be adjusted due to a
>     *Johnson* factor, however, if the creation of
>     the lodestar amount already took that factor
>     into account; to do so would be impermissible
>     double counting.

*Saizan*, 448 F.3d at 800 (footnotes, brackets, and quotation marks omitted; some italics added). The Supreme Court has "barred any use" of the sixth *Johnson* factor, "whether the fee is fixed or contingent." *Rutherford,* 197 F.3d at 193.

Of these factors, only plaintiffs' limited recovery affects the reasonableness of the fee award. None of the other *Johnson* factors persuades the court to make further adjustments to the lodestar. Moreover, the lodestar "includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee" and "an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation." *Perdue*, 130 S.Ct. at 1673; *see also Saizan*, 448 F.3d at 800 ("The lodestar may not be adjusted due to a *Johnson* factor . . . if the creation of the lodestar amount already took that factor into account.").

The Johnson Lawyers contend that they have excised from their bills the time devoted to the claims of unsuccessful plaintiffs.[8] They maintain that the claims on which plaintiffs prevailed are so factually intertwined with the unsuccessful claims that some of the

---

[8]This includes plaintiffs Arrieta and Calip, who were represented by different counsel at trial.

time spent on the unsuccessful claims is recoverable. The court recognizes that time dedicated to successful and unsuccessful claims that "involve a common core of facts" need not be reduced if the claims are so related as to "mak[e] it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435. Nevertheless, "[w]here a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where plaintiff's claims are interrelated, nonfrivolous, and raised in good faith." *Saizan*, 448 F.3d at 801 (internal quotation marks omitted).

The court acknowledges that the Johnson Lawyers have already reduced their fee requests in the exercise of billing judgment, but it deems a further reduction necessary in light of the factual and legal commonalities between the claims of prevailing and non-prevailing plaintiffs, as well as the court's "overarching obligation to consider the overall degree of success obtained relative to the scope of the litigation as a whole." *Roussel v. Brinker Int'l, Inc.*, 2010 WL 1881898, at *10 (S.D. Tex. Jan. 13, 2010). Because the claims of unsuccessful plaintiffs, and the unsuccessful claims of prevailing plaintiffs, required the Johnson Lawyers to address many of the same factual and legal issues as the claims of prevailing plaintiffs, a further reduction is warranted. *See, e.g., id.* (reducing fee award by 20% for failure to certify a

national class and thus to recover for some plaintiffs, where counsel had already reduced fees in the exercise of billing judgment). *See also Jimenez,* ___ F.3d. at ___, 2010 WL 3672226, at *6 (affirming 20% reduction in lodestar where one defendant had been dismissed before trial due to settlement; issues raised against settling defendant and defendant found liable at trial were closely intertwined; much of discovery conducted from dismissed defendant was relevant at trial; trial court reduced the hours of one attorney by 25% to reflect dismissal of claims against settling defendant; plaintiffs' other attorney deducted or reduced hours not relevant to defendant found liable, or where work was applicable to both defendants; and, after considering *Johnson* factors, trial court reduced lodestar amount by 20%).

The Schulman Law Firm, by contrast, represented only prevailing plaintiffs and only in connection with the trial. Because the Schulman Law Firm represented only prevailing plaintiffs at trial, their services could not have benefited unsuccessful plaintiffs or have been devoted to wholly unsuccessful claims. Their fees should not be reduced on either basis. Instead, they should be reduced only because the recoveries of the plaintiffs whom they represented on hostile work environment claims received limited recoveries in relation to what they sought from YTI.

Because plaintiffs request an attorney's fee award in excess

of six times the recovery in this case, because the Johnson Lawyers also represented several unsuccessful plaintiffs or plaintiffs with unsuccessful claims, and because the three plaintiffs who prevailed only achieved limited recoveries on three (or fewer) of the twenty-four claims originally asserted, the court reduces the Johnson Lawyers' fee request by 50%. Because the Schulman Law Firm's requested fees are excessive when compared with the limited recoveries achieved, but because the Schulman Law Firm represented only plaintiffs who prevailed at trial, and only rendered services in connection with the trial, the court reduces the Schulman Law Firm's fee request by 20%.[9]

The court notes that, even with these reductions, plaintiffs' attorneys are recovering in total an aggregate fee that is over three times the amount of damages recovered at trial: $461,943.00. Although this is less than a pure lodestar award, it is reasonable and adequate to induce attorneys to undertake representation in meritorious civil rights cases.

---

[9]If the Schulman Firm alone had represented plaintiffs, no reduction, or a lower percentage reduction, might be warranted. Plaintiffs recovered $140,000 in damages plus interest and costs, and the total fees requested for the Schulman Firm are $105,102.50. But the Schulman Firm constitutes two attorneys and one legal assistant out of five total attorneys and one legal assistant for whose services fees are being awarded, and their fees are part of $860,824.50 requested in all. A 20% reduction is therefore warranted when their part of the fee request is considered in this broader context.

VII

Plaintiffs also ask the court to enhance the lodestar. The court declines this request.

The presumption that the lodestar is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case" is strong. *Perdue*, 130 S.Ct. at 1673. Further, "the burden of proving that an enhancement is necessary must be borne by the fee applicant," and "a fee applicant seeking an enhancement must produce 'specific evidence' that supports the award." *Id.* Although plaintiffs argue that the outlay of expense throughout the litigation merits an enhancement of the lodestar, they have not sufficiently shown, with "specific evidence," an "extraordinary outlay" of the sort that may make an enhancement appropriate. *Id.* at 1674. The court thus declines to enhance the lodestar.

\*   \*   \*

Accordingly, the court grants in part and denies in part plaintiffs' July 19, 2010 motions for attorney's fees. It awards

$461,943.00 in attorney's fees, consisting of the following: $233,920 for Johnson; $137,226 for Byrne; $6,715.00 for Neill; $69,437.40 for Schulman; $9,324.60 for Margaret Schulman; and $5,320 for Smith.

**SO ORDERED.**

November 8, 2010.

                                          SIDNEY A. FITZWATER
                                          CHIEF JUDGE